UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IRVING A. BACKMAN et al., | Case No. 2:16-CV-1108 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| CHRISTOPHER M. GOGGIN, et al., | |
| Defendant(s). | |

Presently before the court are plaintiffs Irving A. Backman, Irving A. Backman & Associates, and G&B Energy, Inc.'s motions for temporary restraining order and preliminary injunction. (ECF Nos. 7, 8).

**I.  Background**

Plaintiff Irving Backman, individually and through Backman & Associates, claims to have over thirty-five years of experience in marketing new products and business entities relating to emerging technologies. (ECF No. 1). Defendant Christopher Goggin claims to have designed, developed, and patented or has patents pending upon technology that purportedly offers a low-cost alternative to traditional sources of energy such as hydrogen fuel cells or lithium batteries. (*Id.*). Defendant, individually and on behalf of defendant C2, claimed that his technology, "Energy Bank," was a feasible, cost-effective, and superior alternative to other energy generation and storage technologies.

In early 2012, the parties discussed a potential joint business venture to develop defendant's Energy Bank technology. (*Id.*). The parties agreed that working prototypes of Energy Bank would be necessary to demonstrate the attributes and advantages of the technology to potential investors and customers. On April 20, 2012, plaintiff Backman &

**James C. Mahan**
**U.S. District Judge**

Associates and defendant entered into an "Agreement of Confidentiality, Non-Competition, and Non-Circumvention." (ECF No. 1, Exh. A). Plaintiffs agreed to introduce Energy Bank technology to potential investors and end users, with a goal of assisting in the funding, development, and marketing of Energy Bank technology. Defendant agreed not to enter into any contracts or business arrangements with those persons or entities introduced by plaintiffs or those considered to be co-workers or competitors. (*Id.*)

In June 2012, plaintiff Backman orally agreed to provide funds to defendant for the purpose of building at least three Energy Bank fuel cells in different sizes and that each unit would be made available to plaintiff G&B and its agents for demonstration purposes. (*Id.*). Plaintiffs and defendant Goggin also discussed and agreed that they would form a new fuel cell company with joint ownership and profit allocation evenly divided between plaintiff Backman, defendant Goggin, and a third party known as the DATT Group. (ECF No. 8). The parties also agreed that plaintiff G&B Energy would own all of the intellectual property rights. Based upon these representations, plaintiffs claim that plaintiff Backman provided defendant approximately $1,042,965.00 for research and the development of Energy Bank. (*Id.*).

On or about May 15, 2015, the parties executed a confirmation agreement similar to and consistent with their June 2012 oral agreement. (ECF No. 7). On July 13, 2015, defendant Goggin signed a patent application assignment and an intellectual property rights assignment, assigning to plaintiff G&B Energy all of his intellectual property rights relating to the provisional patent application and the patent for the invention "Hybrid Metal Fueled Fuel Cell and Battery." (*Id.*).

Plaintiffs claim that defendants have breached these contracts by refusing to produce a working prototype and failing to provide any information about defendant Goggin's progress in developing a working prototype. Defendants have also failed to inform plaintiffs of whether defendant Goggin has filed a non-provisional patent application for Energy Bank or whether the provisional patent application for Energy Bank has expired. Plaintiffs believe that defendant Goggin did not file a final patent application for Energy Bank within one year of the initial

**James C. Mahan**
**U.S. District Judge**

- 2 -

application. If that is the case, plaintiffs assert that the provisional patent has expired, violating both the patent application and intellectual property assignments.

## II. Legal Standard

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65.

"The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, no. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). "Thus, in seeking a temporary restraining order, the movant must demonstrate that the denial of relief will expose him to some significant risk of irreparable injury." *Id.* (quoting *Associated Gen. Contractors of Cal. v. Coal. of Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991)).

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**James C. Mahan**
**U.S. District Judge**

- 3 -

### III. Discussion

Before a preliminary injunction may issue, the plaintiff must show that he will suffer an irreparable injury and otherwise lacks an adequate remedy at law to prevent such injury. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

The mere "possibility" of irreparable harm is not enough to justify a preliminary injunction. As the Supreme Court made clear in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." 555 U.S. at 22; *see also Alliance*, 632 F.3d at 1131 ("Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.") (emphasis omitted). The threat of irreparable harm must also be "immediate" to warrant preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

After considering the factors necessary to obtain a preliminary injunction, the court finds that such a dramatic remedy is premature. Plaintiffs devote one sentence to discussing why they will suffer irreparable injury absent a TRO and preliminary injunction, claiming that because defendants have not produced evidence demonstrating that they have developed the Energy Bank technology, defendants might conceal and dissipate their assets during the pendency of this action. (ECF No. 7). Plaintiffs' claim is not sufficiently supported by the facts presented nor sufficiently argued to merit a preliminary injunction at this time.

Furthermore, plaintiffs do not discuss and certainly have not shown that they will suffer an injury irreparable by the range of other available remedies at law. *See Stanley v. Univ. of S. Cal*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)); *Aronoff v. Katleman*, 75 Nev. 424 (1959). Indeed, simultaneous to their request for a TRO and preliminary injunction, plaintiffs also filed a motion for a prejudgment writ of attachment and garnishment. A writ of attachment is appropriate "[w]here the defendant is about to give, assign, hypothecate, pledge, dispose of or conceal the defendant's money or any property or any

part thereof and the defendant's money or property remaining in this State or that remaining unconcealed will be insufficient to satisfy the plaintiff's claim." N.R.S. § 31.017(5). Accordingly, plaintiffs have failed to sustain their burden to make a clear showing that such a remedy is insufficient and that an injunction is necessary instead.

While other factors for a preliminary injunction may tip in plaintiffs' favor, none outweigh plaintiffs' failure to demonstrate irreparable injury. An "injunction is a matter of equitable discretion" and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Plaintiffs have not adequately met the irreparable injury prong necessary for the issuance of a TRO and preliminary injunction, and, therefore, their request for an injunction is denied. *Winter,* 555 U.S. at 22, 32.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for a temporary restraining order (ECF No. 7) and motion preliminary injunction (ECF No. 8) be, and the same hereby are, DENIED.

DATED June 2, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 5 -